GARCIA, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–232–CR. Argued September 14, 1976.—*
*Decided October 5, 1976.*
(Also reported in 245 N. W. 2d 654.)

For the plaintiff in error there were briefs by *Howard B. Eisenberg*, state public defender, and *Robert J. Paul*, assistant state public defender, and oral argument by *Mr. Paul.*

For the defendant in error the cause was argued by *William L. Gansner*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

BEILFUSS, C. J. The defendant has abandoned his request for review of the order denying his motion for a new trial upon the ground of newly discovered evidence because the facts to be relied upon by the defendant were known to the defendant at the time of trial.

The issue before us is whether the defendant should be granted a new trial in the interest of justice under the discretion given this court by virtue of sec. 251.09, Stats.

On September 23, 1973, two men were observed attempting to break into George's Shopping Center on the south side of Milwaukee. Mrs. Karen Blosmore, who lived across an alleyway, witnessed these acts and called the police. The suspects were apprehended and Mrs. Blosmore was called to the district attorney's office the next day to identify them, which she did. The identified suspects were Roy Garcia and Emerito Quiles. Roy Garcia is a friend but not related to Richard Garcia, the defendant in the action now before the court.

The preliminary hearing for Roy Garcia and Quiles was scheduled for October 2, 1973. Mrs. Blosmore was to be a witness at that hearing.

On the day of the hearing, October 2d, during the early morning hours, about 6:30 a.m., Mrs. Blosmore heard what sounded like an automobile backfire from the alley. She went to the window of the spare bedroom

and observed an automobile entering the alley and two men standing in the alley looking toward her residence. One of the men had a handgun and the other yelled "shoot." She left the window and went to her husband's bedroom. She then heard a shot. The projectile entered the window where she had been standing and lodged in the wall of the room. Roy Garcia knew who Mrs. Blosmore was and where she lived by virtue of the conversations in the district attorney's office on September 24th.

Later that morning, when Mrs. Blosmore appeared for the preliminary hearing for Roy Garcia and Quiles, she saw Roy Garcia and Richard Garcia in the corridor outside the courtroom. She identified Roy Garcia as the man she saw earlier in the morning in the alley with the gun and the defendant Richard Garcia as the one who yelled "shoot." Richard Garcia was arrested, tried, and found guilty of party to the offense of shooting into her home.

At Richard Garcia's trial Mrs. Blosmore positively identified him as one of the men she saw in the alley. He testified in his own behalf and denied he was present or had anything to do with the shooting incident. In support of his alibi his girl friend testified that Richard had stayed with her that night and was sleeping with her at 6:30 a.m. The jury disbelieved the alibi and returned the verdict of guilty.

After Richard Garcia was confined in prison he wrote to one Guadalupe Rios asking him to now come forward with the evidence to support his alibi. Rios then went to an assistant district attorney and, after he was given partial immunity, gave a sworn statement to the effect that he was the driver of the car involved in the shooting episode and that the other two men, those in the alley, were Roy Garcia and Oziel Reyna. He stated unequivocally the defendant here, Richard Garcia, was not present or in any way involved in the shooting. He fur-

ther stated that Richard Garcia knew these facts before his trial but surmised he would not be found guilty and did not want to involve his friends.

At the hearing on the motion for a new trial the sworn written statement was received and made a part of the record. At the hearing it was also revealed that, subsequent to giving the statement, Rios had submitted to a polygraph lie detector test at the request of the assistant district attorney. The results of the lie detector test were inconclusive. Rios was present at the hearing and defendant's attorney offered him as a witness.

The following excerpt is taken from the record:

"MR. SINER: May we put Mr. Rios on the stand, your Honor?

"THE COURT: It isn't necessary, counsel. I'm not going to overturn the verdict of a jury, which is the finest polygraph examination procedure I know of, by the inconclusive results of a mechanical device or by the —on the basis of any affidavits, sworn or not sworn, in which the affiant exposes himself to no criminal penalties for the offense in question in this case by now coming forward at this late stage and offering evidence which would have as its intent the altering of the testimonial situation presented to the jury. I don't require that testimony."

We are now asked to grant a new trial in the interest of justice by exercising our statutory discretion as provided for in sec. 251.09, Stats., rather than to rule on a claimed abuse of discretion of the trial court in denying the motion for a new trial.

 A rule often stated is that "a new trial in the interest of justice will be granted only if there has been an apparent miscarriage of justice and it appears that a retrial under optimum circumstances will produce a different result."[1]

---

[1] *Jones (George Michael) v. State* (1975), 70 Wis. 2d 41, 56, 233 N. W. 2d 430; *State v. Elson* (1973), 60 Wis. 2d 54, 69, 208 N. W. 2d 363.

A reading of the decisions of this court over the past few years will reveal a reluctance to grant a new trial in the interest of justice upon our own motion and we have done so only in exceptional cases.[2] We believe this case to be such an exception.

■ The administration of justice is and should be a search for the truth.[3] The major facts in dispute at the trial were the identification of the defendant and his alibi that he was not there. In this case all of the material evidence as to these issues was not presented to the jury. The testimony of a confessed participant to the shooting (Rios admitted he was the driver of the car with Roy Garcia and Reyna) to the effect that the defendant Richard Garcia was not there and in no way participated is very material and significant. True, the defendant in a cavalier and misguided concept to protect his friend did not disclose this evidence. However the record does not reveal this was an intentional strategic maneuver by his counsel. While we cannot condone the conduct of defendant during the trial, it does not go to the matter of whether the controversy was fully tried and whether he was, in fact, guilty.

The major issue was the credibility of the witnesses. There is nothing in the record to in any way indicate Mrs. Blosmore was not telling the truth as she believed it to be, but in view of the testimony of the defendant, his girl friend and Rios, she could have been mistaken. The testimony of a participant could well have changed the minds of the jury. There is evidence in the record that could challenge the credibility of the defendant, his girl friend and Rios, but the jury did not have an opportunity to hear Rios or evaluate his testimony.

■ This is a close case but we believe the integrity of our system of administration of criminal justice should

[2] *Pate v. State* (1973), 61 Wis. 2d 25, 211 N. W. 2d 495.

[3] *State v. Chabonian* (1971), 50 Wis. 2d 574, 580, 185 N. W. 2d 289.

afford a jury the opportunity to hear and evaluate the evidence of the participant Rios. We therefore order a new trial.

We would like, additionally, to comment that had the trial court heard the testimony of Rios at the hearing on the motion for a new trial and concluded his testimony was incredible and not subject to belief, we, in all probability, would have accepted that evaluation and would not have granted a new trial.

*By the Court.*—Judgment and order reversed and a new trial granted.