STATE of Wisconsin, Plaintiff-Respondent,

v.

Obea S. HAYES, Defendant-Appellant.†

Court of Appeals

*No. 02–1542–CR. Submitted on briefs February 19, 2003.*
*—Decided April 16, 2003.*

2003 WI App 99

(Also reported in 663 N.W.2d 351.)

† Petition to review granted 9-12-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Philip J. Brehm* of Janesville.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sally L. Wellman*, assistant attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. BROWN, J. On appeal, Obea S. Hayes argues that the State's evidence was insufficient to prove his guilt beyond a reasonable doubt and seeks review of his conviction for second-degree sexual assault in violation of WIS. STAT. § 940.225(2)(a) (2001–02)[2] on that basis. The State submits that by failing to raise the issue of the sufficiency of the evidence before, during or after the trial Hayes has waived this argument on appeal. We hold that pursuant to *State v. Gomez*, 179 Wis. 2d 400, 507 N.W.2d 378 (Ct. App. 1993), Hayes need not have raised the challenge to the sufficiency of the evidence at the trial court level to preserve it for appeal. However,

---

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

380

on the merits, we conclude that the evidence was sufficient to support the jury's verdict. Accordingly, we affirm the judgment of conviction.

¶ 2. In March 2000, the State charged Hayes with having committed several criminal offenses, including the second-degree sexual assault of M.M. During the jury trial, M.M. testified that she is four feet and eleven inches tall and weighs ninety-five pounds. She testified that she and Hayes had previously lived together in her apartment and had a sexual relationship. She stated that she ended their relationship in October 1999 after Hayes had come to the apartment and kicked in the door. At that time, Hayes had threatened to kill her. As a result of the incident, Hayes was put in jail. M.M. obtained a seventy-two-hour no-contact order against Hayes, but as soon as he was released from jail, he returned to her apartment, in violation of the no-contact order.

¶ 3. Usually, for brevity and clarity, we summarize a person's testimony rather than give a verbatim account of it. But in this case, the events related by M.M. are not uniformly sequential and this lack of sequential order is what we believe gives rise to Hayes' sufficiency of the evidence argument. The argument is best met by showing M.M.'s testimony in the exact sequence she related the events.

¶ 4. We will thus relate, verbatim, pertinent direct and cross-examination of M.M. M.M. testified that as of March 24, 2000, she lived alone in her apartment and she had not renewed the relationship with Hayes since she broke it off in October. During direct examination, she testified to the events that took place on the night of March 24 as follows:

> Q. Let's go back to the evening of March 24[th]. You said Mr. Hayes knocked on the door, you opened it.

A. Right.

Q. Did you invite Mr. Hayes inside?

A. No, I did not.

Q. Did Mr. Hayes come inside?

A. Yes, he did.

Q. How did that happen?

A. He put his foot in, so—between the door.

Q. Then what happened?

A. He walked right on in.

Q. What did Mr. Hayes say to you at that time, if anything?

A. Where have you been? Apparently, you must have been out there, messin' around.

Q. What did you say?

A. I told him, no. I told him that was none of his business.

Q. What happened after that?

A. He ended up putting his hand on me and touched me in places where he wasn't supposed to be. My breasts, plus my vagina.

Q. How many times did Mr. Hayes touch you on the breasts?

A. About two or three times.

Q. What were the other areas you mentioned?

A. My sitting part.

Q. Are you referring to your vaginal area?

A. Right.

Q. And how many times did he touch you there?

A. Two or three times.

Q. Did he touch you on the buttocks?

A. Yes.

Q. How many times?

A. Two.

Q. Did he say anything to you during that period of time?

A. He grabbed ahold to my clothes and then tored [sic] my T-shirt, along with the bra.

Q. Okay. Did he indicate—make any statements to you about wanting to have sex with you at some point?

A. Yes, he did.

Q. When did that occur?

A. The same night.

Q. Did that occur during—

A. During.

Q. —the time he was taking your clothes off?

A. Right.

. . . .

Q. How long did the struggle go on?

383

A. It went on for a little while. I really can't pinpoint to know exactly about what time. When you are scuffling and fighting, you are not looking at no watch to find out, you know?

Q. What particular injuries did the defendant inflict on you?

A. He ended up choking me with the left hand, and he ended up shoving me against my bathroom corner wall.

Q. Okay.

A. And then he end [sic] up putting a scar on my chest. Then he grabbing ahold to my hand and trying to break my fingers, but he broke the one finger.

. . . .

Q. Going back to when Mr. Hayes was in your apartment on March 24th of 2000, what specifically do you recall him saying about him wanting to have sex with you?

A. Because I hadn't had sex with him since heaven knows when.

Q. I beg your pardon?

A. I hadn't had sex with him at all.

Q. What specifically did he say?

A. He said I had been out with someone else. The way he puts it, he was gonna have sex with me because he called that, his thing.

Q. Did he—did you tell the police officer that he told you that he wanted to throw you down on the floor and have sex with you?

A. Right.

384

Q. Is that what you recall happening, today?

A. Right.

## On cross-examination, M.M. further explained:

Q. As soon as he got inside the apartment, what was the first thing that happened?

A. He done end up accusing me of messin' around.

Q. So it was before he tried to touch you that he accused you of—that he accused you of fooling around?

A. Right. Right.

Q. Okay. At the time, what did you say?

A. I told him I wasn't, and I told him that it was my business. I told him to go find him someone else.

Q. He then touched your breast?

A. Right.

Q. Was he standing in front of you at the time?

A. Right.

Q. Did he put his hand up your shirt?

A. Right.

Q. Did he put his hand inside of your bra?

A. Right.

Q. How long did that go on?

A. Well, it went on for quite awhile, because I kept on wrassling with him, and all of that kind of stuff, to try to get him away from me.

Q. All right. But this was—he was doing this underneath your clothing; is that correct?

A. Right.

Q. At the time—well, how was it he stopped touching your breast? Did you push him away, or did he just stop?

A. I pushed him away.

Q. When he—you testified that he fondled your vaginal area.

A. Right.

Q. Was that also underneath your clothing?

A. That's right. I had pants on.

Q. And he reached down inside your pants?

A. Right.

Q. Same with when he touch [sic] your buttocks?

A. Right.

¶ 5. During the trial, Hayes did not move for a directed verdict at the close of the State's evidence. Hayes then testified at trial that he had never grabbed M.M.'s breasts or buttocks, attempted to fondle her vaginal area, or tried to otherwise physically harm her by choking her or twisting her finger. He stated that he and M.M. had actually resumed their relationship after the October incident and he was living in the apartment off and on with M.M. around the time of the alleged assault.

¶ 6. Nor did Hayes move for a directed verdict at the close of all the evidence. The jury found Hayes guilty of second-degree sexual assault in violation of

WIS. STAT. § 940.225(2)(a). After this verdict was re-
turned, Hayes did not ask for a judgment notwithstand-
ing the verdict. Hayes now appeals the judgment of
conviction.

¶ 7. On appeal, Hayes challenges the sufficiency
of the evidence to convict him of second-degree sexual
assault. The State asserts that Hayes waived the argu-
ment because he failed to raise it in a timely manner in
the trial court. The State contends that to preserve a
claim of insufficiency of the evidence for appellate
review, a criminal defendant must file a motion to
dismiss or a motion for a directed verdict or request a
judgment notwithstanding the verdict.

¶ 8. In *Gomez*, we addressed the very issue the
State raises. In *Gomez*, the defendant, on appeal, chal-
lenged the sufficiency of the evidence to convict him of
enticement of a child in violation of WIS. STAT. § 948.07.
*Gomez*, 179 Wis. 2d at 404. The State asserted that the
defendant had waived this argument because he did not
present this issue to the trial court before, during or
after the trial. *Id.* We observed that the defendant's
argument was based upon the sufficiency of the evi-
dence to convict, which under WIS. STAT. § 974.02(2)[3]
does not require a postconviction motion, and held that
the defendant had preserved the issue for appeal.
*Gomez*, 179 Wis. 2d at 404.

¶ 9. The State argues that we should not apply
*Gomez* to this case. The State first seems to suggest that
our conclusion in *Gomez* somehow conflicts with our

---

[3] WISCONSIN STAT. § 974.02(2) is identical to the statute
analyzed in *Gomez*. Section 974.02(2) reads:

> An appellant is not required to file a postconviction motion in the
> trial court prior to an appeal if the grounds are sufficiency of the
> evidence or issues previously raised.

387

supreme court's holding in *State v. Van Beek*, 31 Wis. 2d 51, 141 N.W.2d 873 (1966), and that we should adopt the approach set forth in *Van Beek*.

¶ 10. In *Van Beek*, our supreme court held that it would decline to review a conviction on the basis of insufficient evidence in the absence of a motion to set aside a verdict challenging an alleged insufficiency of the evidence or a motion for a new trial. *Id.* at 52–53. The court decided that only in the face of "compelling circumstances" would it review insufficiency of the evidence claims if the appropriate motions were omitted. *Id.* at 53.

¶ 11. *Van Beek*, however, is inapposite. The decision was written prior to the enactment of WIS. STAT. § 974.02(2). Section 974.02(2) substantially changed the procedure for claims of insufficiency of the evidence. *See* ROBERT J. MARTINEAU & RICHARD R. MALMGREN, WISCONSIN APPELLATE PRACTICE § 2706 (1978) (noting that the procedure for filing criminal cases had been substantially changed). Under the former procedure, a defendant in a jury trial was required to file a motion for a new trial in order to raise any issue on appeal as a matter of right and, as is evidenced by *Van Beek*, the supreme court was particularly reluctant to review a claimed insufficiency of the evidence without a postconviction motion based on such assertion. *See id.* As we have already observed, § 974.02(2) specifically provides that a postconviction motion challenging the sufficiency of the evidence is not necessary to raise that issue on appeal. We therefore must decline the State's invitation to resurrect *Van Beek*.

¶ 12. The State next asserts that we should confine *Gomez* to its facts. The State appears to suggest

that *Gomez* was only concerned with whether the issue had to be raised by postconviction motion and did not concern whether it had to be raised at least at some point in the trial court. The State is wrong. We were concerned with the exact same issue in *Gomez* that we have in this case. The State here submits that a defendant waives his or her insufficiency of the evidence claim if he or she does not raise it at the trial court level—either before, during or after the trial—by filing a motion to dismiss, a motion for a directed verdict or by requesting a judgment notwithstanding the verdict. While it is true that in *Gomez* we said a postconviction motion is not a necessary condition precedent to an appeal on sufficiency of the evidence grounds, our decision also explicitly held that WIS. STAT. § 974.02(2) makes it unnecessary to raise an insufficiency of the evidence issue before, during or after trial as a precondition to appealing that issue. *Gomez*, 179 Wis. 2d at 404. Therefore, our decision spoke to more than simply whether a postconviction motion was necessary. It spoke to whether *any* motion was necessary at *any* time prior to appeal. It is well established that only the supreme court has the power to overrule, modify or withdraw language from a published opinion of the court of appeals. *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997). We are therefore bound by the law articulated in *Gomez*. We cannot sub silentio get around this rule by simply holding a prior existing case "to its facts." Accordingly, we hold that *Gomez* governs and we reject the State's contention that Hayes did not preserve the issue for appeal.[4]

---

[4] We profess not to understand why the State thinks a "motion for judgment notwithstanding the verdict" is even a

¶ 13. Having concluded that waiver does not preclude Hayes's insufficiency of the evidence claim, we now address the case on the merits. When an appellate court reviews a challenge to the sufficiency of the evidence, the court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the State and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence at trial to find guilt, the court must uphold the conviction. *Id.* If more than one inference can be drawn from the evidence, the reviewing court must accept the inference drawn by the jury. *Id.*

■

¶ 14. WISCONSIN JI—CRIMINAL 1208 sets forth the elements for second-degree sexual assault: (1) the defendant had sexual contact with the victim, (2) the victim did not consent to the sexual contact, (3) the defendant had sexual contact with the victim by use or threat of force or violence. Hayes concedes that the evidence was sufficient to prove beyond a reasonable doubt that he had sexual contact with M.M. without her consent. Hayes's sufficiency of the evidence challenge is extremely narrow, focusing solely on the third element of the offense. He submits only that, while M.M. did testify she was touched in intimate areas without her consent and that a struggle occurred between M.M. and

proper motion to make in a criminal proceeding. A "motion for judgment notwithstanding the verdict" is used in civil, not criminal, procedure.

Hayes on the day in question, "the record is far from definitive" on whether the use or threat of force or violence occurred before or after the sexual contact. Hayes speculates that if the sexual contact preceded the physical violence, then he cannot be guilty of the offense of second-degree sexual assault, and the jury did not have enough information to make the assessment of when the physical violence took place.

¶ 15. As Hayes acknowledges, in *State v. Bonds*, 165 Wis. 2d 27, 32, 477 N.W.2d 265 (1991), our supreme court held that the use or threat of force or violence element of second-degree sexual assault includes forcible contact or force used as a means of making the sexual contact. Thus, the element is satisfied whether the force is used or threatened as part of the sexual contact itself or whether it is used or threatened before the sexual contact. Further, where more than one sexual act occurs, a single threat may suffice; there need not be a separate threat or use of force prior to each act. *Cf. State v. Jaworski*, 135 Wis. 2d 235, 239–41, 400 N.W.2d 29 (Ct. App. 1986) (concluding that a single initial threat of violence could have a continuing coercive effect on a victim who is assaulted on separate occasions).

¶ 16. Here, M.M., who weighs ninety-five pounds, testified that Hayes had become violent towards her on a previous occasion, and, on the evening of the alleged assault, she did not invite Hayes inside the apartment. She testified that he put his foot in between the door and forced his way in. He accused her of messing around and touched her breasts, vaginal area and buttocks repeatedly. According to M.M.'s testimony, it was during that time that he grabbed her clothes and

tore her T-shirt and bra. Hayes also told her during the struggle that he wanted to throw her down on the floor and have sex with her because he said she had been out with someone else. M.M. testified that the sexual contact went on for "quite awhile" because she "kept on wrassling with him, and all of that kind of stuff, to try to get him away from me." M.M. stated that during this struggle, Hayes choked her with his left hand, shoved her against a wall, hurt her chest, and grabbed her finger and yanked it, breaking it.

¶ 17. We do not reverse convictions because a witness fails to describe an event in exact chronological fashion. Rather, we leave it to the jury to listen to the testimony and determine what happened. A jury is charged with drawing whatever reasonable inferences it wants to in furtherance of its duty to find the facts. Here, the jury listened to the totality of M.M.'s description of the event and found Hayes guilty. That guilty verdict means that the jury felt the third element, that Hayes had sexual contact with M.M. by use of threat of force or violence, was proven beyond a reasonable doubt. From the totality of M.M.'s description, a reasonable fact finder could draw the inference that Hayes verbally threatened to have retaliatory sex with M.M., and that the actual sexual contact occurred while he was tearing her clothes and he was wrestling and struggling with her to overcome her resistance. Thus, a reasonable jury could well conclude from this evidence as a whole that Hayes threatened or used force or violence against M.M. prior to or simultaneously with the sexual contact. Further, as Hayes's counsel acknowledged in her closing arguments, the question before the jury was one of credibility. It was for the jury, not this court, to determine the credibility of the

witnesses. *See State v. David J.K.*, 190 Wis. 2d 726, 741, 528 N.W.2d 434 (Ct. App. 1994). The jury chose not to rely upon Hayes's testimony. We will not disturb the jury's credibility determination. We therefore affirm Hayes's judgment of conviction.

*By the Court.*—Judgment affirmed.