COURT OF APPEALS
DECISION
DATED AND FILED

August 13, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP1787-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2020CF1807

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JAYSHONN MIKELL DUFFIE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County:  BEAU G. LIEGEOIS, Judge.  *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Jayshonn Mikell Duffie appeals from a judgment, entered upon jury verdicts, convicting him of three crimes, each as a repeater,

including first-degree sexual assault (sexual intercourse with a person under the age of sixteen), by the use or threat of force or violence. Duffie also appeals from an order denying his motion for postconviction relief. On appeal, Duffie argues that he was denied his constitutional right to the effective assistance of counsel at trial when the circuit court permitted him to represent himself. Duffie further contends that this court should grant him a new trial in the interest of justice. For the reasons that follow, we affirm the judgment of conviction and the order denying Duffie's postconviction motion.

## BACKGROUND

¶2 The State charged Duffie with three crimes, each as a repeater: first-degree sexual assault (sexual intercourse with a person under the age of sixteen), by the use or threat of force or violence; child enticement (sexual contact or sexual intercourse), as a party to the crime; and misdemeanor bail jumping. The charges stemmed from allegations that Duffie and another adult male took Amelia,[1] then fourteen years old, to a house and forcefully sexually assaulted her multiple times. Ultimately, the State was able to match Duffie's DNA profile with DNA samples taken from Amelia's body after the sexual assaults.

¶3 Beginning with his first bail hearing, and thereafter through trial, Duffie repeatedly requested that he be permitted to represent himself. After

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we use a pseudonym instead of the victim's name.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

discussions on the record, the circuit court found that Duffie did not competently understand the DNA evidence to the point where he could represent himself at trial. Therefore, the court appointed standby counsel to discuss the DNA evidence with Duffie. After the meeting with standby counsel, Duffie informed the court that he still wanted to proceed pro se, and the court granted that request.

¶4      Duffie was found guilty by a jury of all three crimes charged. The circuit court sentenced Duffie on the sexual assault charge to the mandatory minimum of twenty-five years' initial confinement. *See* WIS. STAT. § 939.616(1r). The court also sentenced Duffie to fifteen years' extended supervision on that charge. Represented by counsel, Duffie filed a postconviction motion, arguing that the court erred by permitting him to represent himself and that it should order a new trial in the interest of justice. In a written decision and order, the court denied Duffie's postconviction motion.

¶5      Duffie now appeals. Additional facts will be provided below as necessary.

## DISCUSSION

### I. Effective assistance of counsel

¶6      Duffie first argues that the circuit court erred by permitting him to represent himself because doing so violated his constitutional right to the effective assistance of counsel. Relatedly, he also contends that the court never made a finding on the record regarding his competency to represent himself.

¶7      Both the United States Constitution and the Wisconsin Constitution grant an accused the right to self-representation. *State v. Klessig*, 211 Wis. 2d 194, 203, 564 N.W.2d 716 (1997); *Faretta v. California*, 422 U.S. 806, 835

3

(1975). When a defendant seeks to proceed pro se, the circuit court must ensure that "the defendant (1) has knowingly, intelligently and voluntarily waived the right to counsel, and (2) is competent to proceed pro se." ***Klessig***, 211 Wis. 2d at 203. If these conditions are met, the court *must* allow the defendant to represent himself or herself. ***Id.*** at 204. If the conditions are not met, the court deprives the defendant of his or her constitutional right to the assistance of counsel by permitting him or her to proceed pro se. ***Id.*** at 203-04.

¶8      Duffie does not argue that he failed to knowingly, intelligently, and voluntarily waive his right to counsel. Rather, he asserts that he was not competent to represent himself. Competency in the self-representation context refers to whether a defendant has "[a]n identifiable problem or disability that may prevent [him or her] from making a meaningful defense." ***State v. Marquardt***, 2005 WI 157, ¶61, 286 Wis. 2d 204, 705 N.W.2d 878. "In determining whether a defendant is competent to proceed pro se, the circuit court may consider," but is not limited to considering, "the defendant's education, literacy, language fluency, and any physical or psychological disability which may significantly affect his [or her] ability to present a defense." *See* ***State v. Imani***, 2010 WI 66, ¶37, 326 Wis. 2d 179, 786 N.W.2d 40 (citation omitted); ***Marquardt***, 286 Wis. 2d 204, ¶61. "[T]echnical legal knowledge is not relevant." ***Marquardt***, 286 Wis. 2d 204, ¶60 (citation omitted).

¶9      In Wisconsin,

> [d]etermining whether a defendant is competent to proceed pro se is a higher standard than determining whether a defendant is competent to stand trial. "Surely a defendant who, while mentally competent to be tried, is simply incapable of effective communication or, because of less than average intellectual powers, is unable to attain the minimal understanding necessary to present a defense, is not to be allowed 'to go to jail under his own banner.'"

4

*Imani*, 326 Wis. 2d 179, ¶36 (citation omitted). Critically, "the competency determination should not prevent persons of average ability and intelligence from representing themselves unless 'a specific problem or disability can be identified which may prevent a meaningful defense from being offered, should one exist.'" *Klessig*, 211 Wis. 2d at 212 (citation omitted).

¶10 Our review of a circuit court's competency determination in the self-representation context is "limited to whether the … court's determination is 'totally unsupported by the facts apparent in the record.'" *Imani*, 326 Wis. 2d 179, ¶36 (citation omitted); *Marquardt*, 286 Wis. 2d 204, ¶21 ("We review a circuit court determination of whether a defendant is competent to proceed pro se under what is 'essentially a clearly erroneous standard of review.'" (citation omitted)).

¶11 Duffie first expressed his desire to represent himself before the court commissioners presiding over his bond hearing and initial appearance. At Duffie's arraignment, before the circuit court, Duffie again stated that he wanted to represent himself. Specifically, Duffie stated, "I'm trying to tell you there is no point of me having a public defender … when it's proven in my discovery that my DNA was not a match." The court affirmed Duffie's understanding that criminal defense lawyers have specialized knowledge in criminal procedures that he may not possess. The court also conducted a colloquy with Duffie in which it asked Duffie his age, education level, and his proficiency with the English language. The court found that Duffie was "knowingly and voluntarily waiving his right to an attorney." The court also found:

> Mr. Duffie is 20 years old. He's very young. He does not have a high school degree or an equivalency degree. He says that he does understand English, he reads and writes English. He does articulate himself very well. He speaks

5

> very fluently to the [c]ourt, and he was very responsive to my questions and answering them promptly as well. So I don't have any reason to question his competency and that he is freely and voluntarily waiving his right to an attorney at this point.

Duffie reaffirmed his desire to represent himself at various hearings leading up to the jury trial.

¶12 At several of the pretrial proceedings, however, Duffie evidenced a misunderstanding of the DNA evidence. At a final pretrial hearing, the State informed the circuit court that it was "a little bit uncomfortable with Mr. Duffie's" pro se status because it appeared that Duffie did not understand the DNA evidence. The State argued that it did not know whether Duffie could competently defend himself due to "his fundamental misunderstanding of the [DNA] evidence." Again, Duffie stated that he did not want to be represented by an attorney "because of the simple fact that the evidence that I do have is no evidence."

¶13 The circuit court found that Duffie was making statements about DNA evidence "that aren't accurate," that Duffie had a "pretty fundamental misunderstanding" of the DNA evidence, and that Duffie did "not have anywhere near the required education that would be necessary to be able to evaluate the evidence competently." The court determined that Duffie was not competent to adequately represent himself based on his misunderstanding of the DNA evidence. Over Duffie's objection, the court stated:

> So I'm going to have a lawyer appointed to Mr. Duffie. That lawyer can meet with Mr. Duffie, go over the evidence with him, and then Mr. Duffie can make a knowing and informed decision about whether he wants to proceed on the case pro se or continue with the lawyer that will be provided to him.

Duffie later filed a speedy trial motion, challenging the court's decision to not let him immediately proceed to trial pro se and arguing that he was competent to represent himself at trial.

¶14    The circuit court appointed Duffie standby counsel shortly thereafter. The court stated that the purpose of standby counsel was to review the DNA evidence with Duffie. The court articulated, "So right now you have chosen to proceed pro se, Mr. Duffie, so at the trial right now you'd be proceeding by yourself with [standby counsel] sitting behind you. But if you changed your mind and wanted [counsel] to actually represent you, just let [the attorney] know that."

¶15    At a hearing the day before the scheduled jury trial, standby counsel informed the circuit court that he met with Duffie the week prior and discussed with him the DNA evidence. Duffie explained that he still wanted to represent himself and stated that "[t]he allegation was that my DNA was found. The evidence shows otherwise."

¶16    Based on Duffie's response that he wanted to represent himself, and that Duffie had an opportunity to review the DNA evidence with an attorney, the circuit court relieved standby counsel of his duties. The court also stated that "[n]obody has brought up competency" since the State previously raised the issue. Duffie then submitted a signed standard waiver of the right to an attorney form, as directed by the court.

¶17    On the morning of the jury trial, the circuit court again found that Duffie was "freely, voluntarily, intelligently, and knowingly waiving his right to an attorney. He knows what attorneys can do for him, and he's willingly choosing to represent himself." The court also noted that it provided Duffie with an

attorney to discuss the DNA evidence and that Duffie "continues to want to proceed pro se which is certainly his right."

¶18    In Duffie's opening statement, he told the jury, "I just want to say that I don't believe that DNA was found.…  And a defendant—a defense hypothesis would support [a] conclusion … that I was not a contributor" because the "ratio" provided in the DNA report is "less than one quadrillion."  During the trial, a forensic scientist with the Wisconsin State Crime Laboratory testified that she analyzed several of the buccal swabs from Amelia's sexual assault examination, including the vaginal, cervical, and anal swabs.  In each swab, the scientist discovered that the DNA present on those items was *greater than* "one quadrillion times more likely" to be Duffie's DNA than someone else's DNA.

¶19    On cross-examination, Duffie stated that the "likelihood ratio[ is] less than one quadrillion—that's what the likelihood ratio said on the evidence, that it was *less than* the one quadrillion times"—which demonstrated that Duffie was *not* a contributor to any of the DNA samples found in or on Amelia. (Emphasis added.)  The scientist stated, "So it is greater than one quadrillion times, not less than."  Duffie responded, "[H]ow is it that the value was greater than one quadrillion?  So that's basically saying I had sexual contact with the victim?"  Duffie stated that his confusion with the DNA report was that he thought the "greater-than sign" was a "lesser-than sign."  He also repeatedly stated that "[t]his is impossible" and "[t]his cannot be true."

¶20    In the circuit court's postconviction decision and order, it found that "[t]his was not a case of [Duffie] being incompetent to understand the evidence." Rather, Duffie "simply disagreed with what the evidence showed ….   Like [Duffie], lawyers also are not DNA experts."  The court also found that Duffie was

8

engaging "in some level of attempted manipulation of the court process …. So [Duffie]'s purported surprise after hearing the DNA analyst's testimony at trial … seem[s] remarkably disingenuous at this point."

¶21     When considered in context, the reasonable inference is that the circuit court found, on the record, that Duffie was competent to represent himself. Specifically, following several proceedings addressing Duffie's self-representation, the court stated the day before the trial that "[n]obody has brought up competency." On the morning of the trial, the court also noted that it provided Duffie with an attorney to discuss the DNA evidence and that Duffie "continues to want to proceed pro se which is certainly his right." These findings were made after the State previously raised competency and after Duffie met with standby counsel to discuss the DNA evidence.[2] Accordingly, we conclude that the court impliedly incorporated the previous competency discussions into its finding that Duffie was capable of representing himself at trial. We therefore reject Duffie's assertion that the court failed to make a competency determination on the record.[3]

¶22     Furthermore, the circuit court reasonably determined that Duffie was competent to represent himself at the jury trial. Duffie informed the court that he was twenty years old; had attained the eleventh grade level and was working on his GED; could read and write in English; was not receiving treatment for mental

---

[2] We also note that the circuit court reiterated its pretrial competency findings in its decision and order denying Duffie's motion for postconviction relief.

[3] Many of Duffie's arguments to the contrary focus on the circuit court's statements made prior to appointing standby counsel and prior to standby counsel meeting with Duffie. As we have discussed, however, the imperative question is whether Duffie was competent to represent himself *after* meeting with standby counsel to discuss the DNA evidence.

health or substance abuse issues; was not under the influence of any alcohol, drugs, or medications; and did not have any physical or psychological disabilities which would affect his ability to think clearly and "make good decisions." Duffie also demonstrated his mental capacity by repeatedly confirming throughout the court proceedings his understanding that he was going to "be at a big disadvantage in these proceedings because" the State was represented by "attorneys who handle criminal cases every day" and that he would "still be required to present evidence and proceed in the same manner as an attorney would be."

¶23 Based on the circuit court's findings of fact leading up to the jury trial, the only question related to Duffie representing himself was his misunderstanding of the DNA evidence.[4] That is, based on Duffie's education,

---

[4] The State contends that the circuit court would have violated Duffie's right to self-representation had it appointed him an attorney against his will solely on the basis that he did not understand the DNA evidence. In support of this proposition, the State cites *Washington v. Boughton*, 884 F.3d 692 (7th Cir. 2018). In *Boughton*, the United States Court of Appeals for the Seventh Circuit noted that it previously held that two Wisconsin opinions, including *State v. Imani*, 2010 WI 66, 326 Wis. 2d 179, 786 N.W.2d 40, "violated the clearly established rule of [*Faretta v. California*, 422 U.S. 806 (1975)], that a court may not force a lawyer upon a defendant based on his [or her] perceived lack of education, experience or legal knowhow." *Boughton*, 884 F.3d at 702. The Seventh Circuit reasoned "that the focus of the inquiry," as dictated by the United States Supreme Court, "is on the defendant's mental capacity"—i.e., his or her "mental functioning." *Id.* (citation omitted). As that focus applied in *Boughton*, the court held that a Wisconsin circuit court unconstitutionally denied a defendant his right to self-representation on the basis that the defendant could not "understand and decipher" the State's DNA evidence. *Id.* at 701.

We are bound by our state supreme court's precedent. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997); *but see State v. Jennings*, 2002 WI 44, ¶19, 252 Wis. 2d 228, 647 N.W.2d 142 ("The court of appeals must not follow a decision of this court on a matter of federal law if it conflicts with a subsequent controlling decision of the United States Supreme Court."). In any event, to the extent *Boughton* does not conflict with our state's binding precedent, we need not address that distinction as we conclude on narrower grounds that the circuit court reasonably determined that Duffie had the minimal understanding of the DNA evidence necessary to present a defense. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (stating that "we decide cases on the narrowest possible grounds").

literacy, and lack of physical or psychological disabilities, the court found that Duffie would be competent to proceed pro se if he garnered an understanding of the DNA evidence. Therefore, the court appointed standby counsel in order for Duffie to gain that requisite knowledge. Standby counsel later informed the court that he had reviewed the DNA evidence with Duffie and that he explained the basics of DNA science to Duffie. At the hearing held the day before the jury trial, the court found that no party, including standby counsel, had raised a competency issue after Duffie had been explained the DNA evidence. During the same hearing, Duffie maintained that he wanted to represent himself at trial.

¶24 At that point in the proceedings, the circuit court reasonably determined that Duffie had, at the very least, the "minimal understanding necessary to present a defense." *See Imani*, 326 Wis. 2d 179, ¶36 (citation omitted). All that needed to be conveyed to Duffie in order for him to have that minimal understanding was that the DNA evidence showed with great certainty that he was one of the two contributors to the DNA found on the samples taken during Amelia's sexual assault examination. Any higher competency burden would be contrary to *Klessig* and to Duffie's right to self-representation.

¶25 Moreover, the fact that Duffie seemed surprised about the DNA evidence at trial does not render the circuit court's competency finding clearly erroneous. The court explained in its postconviction decision and order that Duffie's purported lack of knowledge and "surprise" about the DNA evidence at trial was disingenuous and that he was intentionally attempting to get a potential conviction overturned on appeal. As the court alluded to in its decision, Duffie certainly did not want to believe the evidence against him. However, after meeting with standby counsel, Duffie could no longer credibly claim that he

11

somehow remained unaware of how convincingly the DNA evidence tied him to the sexual assault.

¶26 Duffie cites *Marquardt* to argue that the circuit court here should have considered the complexity of the DNA evidence and Duffie's alleged misunderstanding of that evidence. In *Marquardt*, the circuit court found the defendant incompetent to proceed pro se based upon the defendant's lack of legal skill, the seriousness of the charges, the complexity of the case, and the defendant's "mental illness." *Marquardt*, 286 Wis. 2d 204, ¶¶62-63, 65. Related to this latter finding, the court stated that it was "particularly concerned over [the defendant's] kind of microscopic review of all of these things, whether he's detached enough to make any sense out of the charges and to put the [S]tate to its burden of proof." *Id.*, ¶63. One psychiatrist had opined that the defendant was "delusional" and that he could not "appreciate the evidence" against him. *Id.*, ¶65. Another psychiatrist stated that the defendant suffered from "a delusional disorder of paranoid schizophrenia." *Id.*, ¶66. On appeal, our supreme court affirmed the circuit court's competency determination, stating that "the medical and psychological opinions in this case identified a number of specific problems that could have prevented [the defendant] from meaningfully presenting his own defense and that the circuit court took these problems into account." *Id.*, ¶69.

¶27    Here, there is no evidence that Duffie suffered from a mental illness that prevented him from understanding the evidence against him.[5]   Moreover, the standard of review regarding a circuit court's competency determination is whether the court's finding is "totally unsupported by the facts apparent in the record." *Imani*, 326 Wis. 2d 179, ¶37 (citation omitted); *Marquardt*, 286 Wis. 2d 204, ¶21.   Therefore, the question before us is not whether another court could have reasonably found Duffie incompetent.   The question, properly framed, is whether the circuit court, here, reasonably found Duffie competent.   Based on the foregoing, including the court's finding that Duffie was feigning his misunderstanding of the DNA evidence, we conclude that the court's findings surrounding Duffie's competence to represent himself were reasonable.

## II.  Interest of justice

¶28    Lastly, Duffie argues that we should order a new trial in the interest of justice because the circuit court permitted the State to introduce inadmissible hearsay evidence to prove the element of force.

¶29    During the trial, the State asked Green Bay Police Department Detective Craig Brey whether, during the course of his investigation into the sexual assaults, he was "able to get any additional elaboration as it related to the use of force in the case."   Brey responded that Amelia "explained to [him] that

---

[5] Duffie also cites *Indiana v. Edwards*, 554 U.S. 164 (2008), to argue that "allowing a defendant who lacks the mental capacity to conduct his own defense to proceed to trial without counsel" is unconstitutional.   *Edwards*, however, is not relevant authority here.   There, a state trial court denied the defendant's request to represent himself at trial because the defendant undoubtedly had a "mental illness" (schizophrenia).   *Id.* at 168-69.   The United States Supreme Court affirmed that decision, concluding that courts may decline requests for self-representation by defendants who "suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves."   *Id.* at 178.   Again, there is no evidence in the record that Duffie suffered from a mental illness.

[Duffie] had pinned her face down on the bed and engaged in sex with her from behind." According to Duffie, the introduction of this inadmissible evidence rendered the controversy not fully tried.

¶30 This court has the authority to grant a new trial under our discretionary power of reversal under WIS. STAT. § 752.35 "if it appears from the record that the real controversy has not been fully tried."[6] *Id.* "[S]ituations in which the controversy may not have been fully tried have arisen … when the jury had before it evidence not properly admitted which so clouded a crucial issue that it may be fairly said that the real controversy was not fully tried." *State v. Cameron*, 2016 WI App 54, ¶30, 370 Wis. 2d 661, 885 N.W.2d 611 (alteration in original; citation omitted). "The power to grant a new trial in the interest of justice is to be exercised 'infrequently and judiciously'" and "only in 'exceptional cases.'" *State v. Avery*, 2013 WI 13, ¶38, 345 Wis. 2d 407, 826 N.W.2d 60 (citations omitted).

¶31 Pertinent here, to convict Duffie of the first-degree sexual assault charge, the State was required to prove beyond a reasonable doubt that Duffie had sexual intercourse with the victim by use or threat of force or violence. *See* WIS. STAT. § 948.02(1)(c); WIS JI—CRIMINAL 2102C (2008). "[T]he use or threat of force or violence element … includes forcible contact or force used as a means of making the sexual contact," and, therefore, "the element is satisfied whether the force is used or threatened as part of the sexual contact itself or whether it is used or threatened before the sexual contact." *See State v. Hayes*, 2003 WI App 99,

---

[6] Duffie does not argue that "it is probable that justice has for any reason miscarried." *See* WIS. STAT. § 752.35.

¶15, 264 Wis. 2d 377, 663 N.W.2d 351. Importantly, "[u]nder Wisconsin law, force has been used when the victim is compelled to submit." *State v. Long*, 2009 WI 36, ¶24, 317 Wis. 2d 92, 765 N.W.2d 557.

¶32 This case does not present the exceptional facts necessary for us to exercise our discretionary power to order a new trial. Even if Detective Brey's testimony was inadmissible hearsay, there was a plethora of other evidence supporting the use of force element.

¶33 Amelia testified that on the night in question, she was by herself on the boardwalk in Green Bay to see fireworks for a Fourth of July celebration. At some point, a man approached her and asked her how old she was. After Amelia told him her age, the man "laughed." A second man—whom the State alleged was Duffie—approached shortly thereafter and one or both of the men invited Amelia back to a house. Amelia testified that she went with the men because she was by herself and wanted to "hang out." On the way to the house, Amelia conversed with the first man and described the conversation as "chit chat" and "normal."

¶34 Upon arriving at the house, Amelia immediately went into a bedroom with the first man. Amelia testified that the first male immediately "forcibly" told her to take her clothes off. She stated that she "was scared and uncomfortable but at the same time like I couldn't really do anything because I didn't know what would happen." Amelia stated that she did not know where she was in terms of how to get home, did not have any friends with her, did not know either of the two men, and that they were the only three people at the house.

¶35 Amelia further testified that the first man began "touching" her "from the breast[s] down" using his hands and his mouth. The man then vaginally penetrated her using his hand and then his penis. Amelia stated that the man used

his hand to hold her down while he had sex with her and that she "felt stuck." The man "finished" and left the room.

¶36 The second man, Duffie, then entered the room while Amelia was still lying on the bed. Without saying anything, Duffie undressed and got into bed with Amelia. Amelia testified that she was face down on the bed when Duffie "[j]ust kind of got right into it" by vaginally penetrating her with his penis and having sex with her. She could not remember whether Duffie was pushing her head into the mattress, but she stated that she experienced the "same emotions" as during the first sexual assault. Duffie then "finishe[d]" and left the room. Amelia stated that after Duffie left the room, she felt "shocked."

¶37 According to Amelia, the first male entered the room again and sexually assaulted her a second time. Afterward, Amelia was able to get her phone and message a friend for help. Her aunt called Amelia while Amelia was still at the house, but she could not answer because the first man was still in the room.

¶38 Green Bay Police Department Officer Michael Stuedemann testified that he interviewed Amelia shortly after the sexual assaults. According to Stuedemann, Amelia informed him that she "was forced into" having sex with Duffie. Further, a sexual assault nurse examiner (SANE) testified that she examined Amelia following the sexual assaults. The SANE report completed for the examination, which was admitted into evidence, noted that Amelia informed the SANE that she feared for her life during the sexual assaults. While Duffie challenges the admissibility of Detective Brey's testimony noted above, Duffie does not challenge the admissibility of Stuedemann's testimony or the SANE report.

¶39     A reasonable jury could conclude, from the evidence as a whole, that Amelia was "compelled to submit" prior to the actual sexual assault committed by Duffie. *See Long*, 317 Wis. 2d 92, ¶24. The jury heard that Amelia was a fourteen-year-old girl who was led to an unknown house with two adult men she had just met. Upon her arrival, she was instructed to get undressed despite her not wanting to do so, and then Duffie and the other male took turns sexually assaulting her.

¶40     Further, the jury could reasonably infer from the fact that Amelia was on her stomach during Duffie's sexual assault that Duffie was on top of her during that time. Accordingly, the jury could determine that Duffie's sexual penetration while on top of Amelia constituted the use of force because Amelia "ha[d] no choice at the moment of simultaneous use of force and making of contact." *See State v. Bonds*, 165 Wis. 2d 27, 32, 477 N.W.2d 265 (1991) ("Force used at the time of contact can compel submission as effectively as force or threat occurring before contact. Regardless of when the force is applied, the victim is forced to submit.").

¶41     The jury also heard from Amelia that she "was scared and uncomfortable" during the first sexual assault but that she "couldn't really do anything because" she "didn't know what would happen" if she asked the man to stop. *See Long*, 317 Wis. 2d 92, ¶25 (concluding that the use of force element was met when, among other things, the victim testified that "she was too afraid to cry out"). Amelia also testified that she had these same emotions during the sexual assault committed by Duffie. The SANE report also evidenced that Amelia feared for her life during the sexual assaults, and Officer Stuedemann's testimony demonstrated that Amelia felt she was forced to allow Duffie to sexually assault her.

17

¶42     Under the facts of this case, the matter was fully tried, and we decline to exercise our discretionary authority to order a new trial in the interest of justice.[7]

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.     *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] Duffie also contends, citing *Garcia v. State*, 73 Wis. 2d 651, 245 N.W.2d 654 (1976), that we should order a new trial in his case because of his "failure as a pro se litigant to mount any meaningful defense to [the use of force element] due to his erroneous belief that the DNA evidence exonerated him." *Id.* at 655 (concluding that a new trial in the interest of justice was warranted because the defendant's alibi was paramount to the trial and, most notably, the defendant, with "cavalier and misguided" intentions, did not disclose the identity of the true perpetrators). Given the evidence before the jury, the controversy was fully tried. Additionally, Duffie presented a defense to the use of force element. During his cross-examination of the SANE, Duffie confirmed that the SANE report's "[d]escription of the assault" section stated that no "[w]eapons/threats/physical or ligature restraints/foreign objects [were] used." Duffie argued this point in his closing argument.

To the extent Duffie argues that we should grant him a new trial in the interest of justice based upon his misunderstanding of the DNA evidence, we disagree. The DNA evidence against Duffie, as well as the other evidence admitted at trial, was particularly strong and does not warrant reversal. *See State v. Cameron*, 2016 WI App 54, ¶30, 370 Wis. 2d 661, 885 N.W.2d 611.