COURT OF APPEALS

DECISION

DATED AND FILED

May 19, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1672-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF160

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LANDON J. NOW,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Langlade County: JOHN B. RHODE, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Landon J. Now appeals from a judgment convicting him, pursuant to a jury's verdicts, of disorderly conduct and felony bail

jumping. Now challenges his convictions on several bases, including (1) the sufficiency of the evidence to support the jury's findings that he committed disorderly conduct and that he "intentionally committed the crime of bail jumping"; (2) whether the circuit court properly limited the victim's cross-examination at trial; and (3) whether he knowingly waived his constitutional right to have a jury determine all the elements of bail jumping. For the reasons that follow, we reject all of Now's arguments and affirm his judgment of conviction.

## BACKGROUND

¶2    On July 27, 2019, at approximately 2:00 a.m., an altercation occurred between Now and John Keller[1] at a bar in Antigo, Wisconsin. Keller later received medical treatment for his injuries, which included a laceration on his forehead requiring stitches, and he reported the altercation to law enforcement. At trial and on appeal, Now and the State each present different versions of the altercation, with Now framing Keller as the aggressor and the State identifying Now as the one who escalated the situation.

¶3    The State charged Now with substantial battery, disorderly conduct, and felony bail jumping. At the time of this incident, Now had been released on a $10,000 signature bond in a separate case charging him with felony conspiracy to manufacture or deliver THC (greater than 10,000 grams), with the specific condition that he was not to commit any further crimes.

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2023-24), the State uses this pseudonym to identify the victim, and we will do so as well.

All references to the Wisconsin Statutes are to the 2023-24 version.

¶4 Before trial, Now moved to sever the bail jumping count from the substantial battery and disorderly conduct counts "because of the prejudice associated with the felony bond." The circuit court held a nonevidentiary hearing on the motion, but, ultimately, the parties reached a stipulation to resolve the motion on the morning of the trial. The agreement, signed by both attorneys and Now, stated that Now was "stipulating to the first 2 elements" of the felony bail jumping charge and "leaving the final element for the jury to decide." The jury was also to be read the following instruction: "The parties stipulate that the defendant was released on a bond that included the condition that he not commit a crime. He signed this bond."

¶5 The circuit court held a one-day jury trial on May 22, 2024. Captain Kyle Rustick with the Antigo Police Department testified that after the altercation, he obtained surveillance video footage from the bar. That surveillance footage was played for the jury. Rustick also testified that he followed up with Keller the next day and documented his injuries.

¶6 Keller testified that he previously worked for Now and "consider[ed] him a friend at one point." According to Keller, on the night of the altercation, he and Now "were kind of in an argument in the back" of the bar, and Keller "tried walking away." Keller then walked around the outside of the building to the front of the bar, where he saw Now smoking a cigarette, and they "kind of got in a scuffle" or "wrestling match." Keller "[p]ushed him away" and then "remember[ed] hitting the ground." According to Keller, he sustained a "pretty big gash" on his forehead that was bleeding. Keller called his girlfriend to pick him up, and he went to the hospital to obtain medical treatment. Keller admitted that he had been drinking alcohol that evening.

¶7 On cross-examination, Keller agreed that he was also Now's former tenant and that they previously had a "misunderstanding" about rent payments. Keller also admitted that he had "some anger" toward Now and was "bad[-]mouthing him" on the night of the altercation. Keller recalled being "angry" and yelling at Now, and Keller admitted that it was "possible" that he "came at" Now and that "Now put [Keller] to the ground as a result of" Keller coming at him.

¶8 Officer Jerry Reichl, also with the Antigo Police Department, testified that he met with Keller after the incident and saw that Keller "was bleeding from a wound on his head" and his face "was all scuffed up." Reichl stated that he and another officer went to the bar "to try and find the other person involved," but they did not find Now. Reichl admitted that he never took Now's statement before charges were filed, and Now later testified that "[n]obody … even got a statement from me." Reichl did speak with a witness, Ariel Parker, at the bar, and she told him that "Now was the instigator." Reichl, who testified that he "deal[s] with bar fights a lot," viewed the surveillance footage, and, in his opinion, it did not "look like" Now acted in "self-defense" because the fight "looked pretty one-sided" and Keller did not "fight back at all."

¶9 Parker also testified by video. She stated that she was at the bar that night, but she did not see the beginning of the altercation. According to Parker, she heard a "commotion of loudness," "turned around," saw Now "grab" Keller's head and "slam it into the bar in front of him," and saw that Keller "fell to the

4

floor and his head started bleeding." Parker did not recall Keller "mak[ing] any physical action towards" Now, but she admitted "[t]hat night is very hazy."[2]

¶10 After the State rested, Now moved to dismiss the charges, arguing that the State had not "established sufficient evidence to proceed." The circuit court denied the motion, concluding that, based on the surveillance video and the testimony, the State had presented sufficient evidence to proceed both on the disorderly conduct count and the substantial battery count and that the bail jumping charge "will flow from" any convictions on those other counts.

¶11 Now called several witnesses to testify. First, Cyle Brown testified that he was at the bar that evening and that Keller was "really mad at" Now "for something." Brown did not see the altercation, and he did not hear Now make any statements to Keller.

¶12 Steven Palmer was also at the bar the night of the altercation, and he knew both Now and Keller, although he agreed that he and Now were "[g]ood friends." According to Palmer, Keller had "nothing good to say about [Now] anytime I was around." Palmer testified that he saw Keller "put his hands on" Now "outside" the open "doorway" of the bar, "they got into it," and Now "switched it around on" Keller.

¶13 Steven Martyn testified that he also knew both Now and Keller and that he was in the bar during the altercation. Martyn did not see what happened

---

[2] Now called a private investigator he hired who spoke with Parker after the altercation, and the investigator testified that Parker told him that "she really didn't see the incident" and that "[s]he had c[o]me into the bar via the backdoor and by the time she got in there, she saw [Keller] getting up off the floor."

outside of the bar, but he saw Now and Keller "both come through the doorway from the outside" and land "on the floor" with Now on top. While they were on the floor, Martyn saw Now throw "a couple" "punches" at Keller. According to Martyn, after the altercation, Now did not try to go after Keller, but Keller went "[b]ack towards" Now and was being "loud and boisterous" while others "were stopping him from doing that."

¶14 After a colloquy, Now testified on his own behalf. Now explained that prior to the altercation, Keller had been his tenant at a property that Now owned, that Keller had owed him rent money, and that Keller moved out of the property in the middle of the night. According to Now, on the night of the bar fight, Now saw Keller outside in the back of the bar, and rather than "deal with him," Now turned around and walked through the bar to the front door to finish his cigarette. While Now was smoking in front of the bar, he stated that Keller came to the front and stood in the alley about 20 feet away. Now "was kind of surprised" and he "didn't know if [Keller] was following [him] or what his situation was." Now agreed during his testimony that he "initiated the first confrontation" and told Keller, "I did a lot of favors for you" and "you're kind of white trash" or "real piece of work you are." Now then "turned around and … started walking back" into the bar. Keller then "yelled … something about [Now] and tackled [him]." To avoid being tackled, Now did a "maneuver" and "turned [Keller]" around to "switch the tackle" so Now "wouldn't be the one getting tackled and [Keller would] go [down] first," and the two men "flew [through the front door] into the bar."

¶15 Now stated that he did not intend to injure Keller and that he did not intend to commit a crime. Now agreed that he had "stipulated that" he was "on bond" at the time of this altercation. On cross-examination, Now admitted that the

video showed Now punching Keller while they were on the ground, but he explained "that was an instant reaction" and "100-percent self-defense."

¶16 The jury found Now guilty of disorderly conduct and felony bail jumping, but it found him not guilty of substantial battery.

¶17 Now filed four motions seeking relief from the jury's verdicts. In his motion for judgment notwithstanding the verdict (JNOV), Now argued that the circuit court erroneously exercised its discretion by denying his motion to cross-examine Keller "about his desire to not have a trial proceed and have the charges dropped," which "should have been heard by the jury." Now also renewed his motion to dismiss for lack of evidence, which contended that because he "was entitled to defend himself" and was found not guilty of substantial battery, the evidence was not sufficient to support his convictions for disorderly conduct and bail jumping. Now additionally moved for a new trial on the bail jumping charge "based on the failure of a record establishing a full and complete waiver of a jury determination and the defendant's understanding of the right to have the jury determine the elements that were the subject of stipulation." Finally, Now filed a motion for a new trial, which alleged that he was denied his right to cross-examine Keller on Keller's "request that the trial not proceed" and that a new trial or "dismissal in the interest of justice" was warranted because the evidence was insufficient to support the verdicts.

¶18 The circuit court held a nonevidentiary hearing and denied each of Now's motions on the record. The circuit court sentenced Now on the felony bail jumping count to 90 days in jail with Huber privileges, ordered court costs, and stayed the sentence pending appeal. On the disorderly conduct count, the court ordered only court costs. Now appeals.

**DISCUSSION**

¶19    On appeal, Now renews the arguments raised in his post-trial motions.  Now challenges the sufficiency of the evidence to support both of the jury's verdicts.  He also seeks a new trial based on the alleged violation of his Sixth Amendment right to confrontation when the circuit court limited Keller's cross-examination and because he did not knowingly waive his constitutional right to have a jury determine all the elements of the bail jumping charge.  We address and reject each of these arguments below.

**I.  Sufficiency of the evidence**

¶20    Now first contends that the circuit court erred by not granting his motion for JNOV because the evidence was insufficient to support the jury's verdicts in this case.[3]  "The question of whether the evidence was sufficient to sustain a verdict of guilt in a criminal prosecution is a question of law, subject to our de novo review."  *See* *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.  The defendant "bears a heavy burden in attempting to convince a

---

[3] We, like the State, question Now's use of a motion denominated as one for JNOV to challenge the sufficiency of the evidence to support the jury's verdicts.  We acknowledge that the civil practice rules under WIS. STAT. § 805.14 generally apply in criminal cases unless context otherwise requires, *see* WIS. STAT. § 972.11(1), but "[a] motion for JNOV does not challenge the sufficiency of the evidence to support the verdict," *Management Comput. Servs. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 176, 557 N.W.2d 67 (1996).  Instead, a motion for JNOV asserts that "for reasons evident in the record which bear upon matters not included in the verdict, the movant should have judgment."  Sec. 805.14(5)(b).  That is not the challenge Now makes here.  Further, as the State points out, the applicability of a motion for JNOV has been questioned in criminal cases.  *See* *State v. Hayes*, 2003 WI App 99, ¶12 n.4, 264 Wis. 2d 377, 663 N.W.2d 351 ("A 'motion for judgment notwithstanding the verdict' is used in civil, not criminal, procedure."); *State v. Escobedo*, 44 Wis. 2d 85, 90, 170 N.W.2d 709 (1969) ("We have grave doubts of its use at all in a criminal proceeding.  Certainly, it is not an accepted or traditional post-verdict motion in a criminal case.").  Regardless of the label Now uses, Now's challenge is to the sufficiency of the evidence to support his convictions, and we will treat it as such.

reviewing court to set aside a jury's verdict on insufficiency of the evidence grounds." *State v. Booker*, 2006 WI 79, ¶22, 292 Wis. 2d 43, 717 N.W.2d 676. When reviewing the sufficiency of the evidence to support a conviction, we "may not substitute [our] judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).

¶21 It is the function of the jury, not this court, to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* at 506. "Thus, when faced with a record of historical facts which supports more than one inference, an appellate court must accept and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law." *Id.* at 506-07. Ultimately, if any possibility exists that the jury could have drawn the appropriate inferences from the evidence adduced at trial to find the defendant guilty, then we may not overturn the jury's verdict, even if we believe the jury should not have found guilt based on the evidence before it. *Id.* at 507. We are required to search the record for "facts that support upholding the jury's decision to convict." *State v. Hayes*, 2004 WI 80, ¶57, 273 Wis. 2d 1, 681 N.W.2d 203.

*A. Disorderly conduct*

¶22 Now asserts that the evidence was insufficient to support the jury's guilty verdict on the disorderly conduct charge under WIS. STAT. § 947.01(1). That statute provides that "[w]hoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise

disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor." Sec. 947.01(1); WIS JI—CRIMINAL 1900. The conduct may still be disorderly even though it does not result in an actual disturbance because "[t]he law requires only that the conduct be of a type that tends to cause or provoke a disturbance under the circumstances as they then existed." WIS JI—CRIMINAL 1900.

¶23 Based upon the testimony presented at trial and the surveillance footage, giving deference to the jury's verdict, and viewing the evidence in the light most favorable to the State, we conclude that the evidence was sufficient for the jury to find Now guilty of disorderly conduct. *See State v. Long*, 2009 WI 36, ¶19, 317 Wis. 2d 92, 765 N.W.2d 557. Now agreed on cross-examination that he was the first one to "initiate[]" contact with Keller by insulting him, calling Keller something along the lines of "white trash" or a "piece of work." Now also testified that at the time the two men were outside, they were about 20 feet apart. Thus, a reasonable inference would be that Now must have yelled these insults at Keller from 20 feet away. Keller responded to Now's insults, according to Now's testimony, by yelling something back and then tackling Now.

¶24 The tackle caused the two men to fall through the open front door of the bar onto the floor, and the video footage shows all the patrons in the bar responding to the commotion that this caused. The footage also shows that while the two men were still on the floor, Now appeared to punch Keller at least three times before they were pulled apart. Thus, Now's verbal taunt to Keller was loud, abusive, and resulted directly in a public disturbance. While we acknowledge that there is more than one inference that could have been drawn by the jury in this case, we must accept the inference that was drawn because it is a reasonable inference based on the evidence presented. Now has failed to overcome his heavy

burden to show that no reasonable jury could have concluded that he was guilty of disorderly conduct.

¶25  In support of his contrary position, Now relies on our unpublished decision in *Columbia County v. Lounsbury*, No. 2009AP1880, unpublished slip op. (WI App Dec. 30, 2009).[4]  *Lounsbury* also involved a bar fight where the defendant was charged with disorderly conduct, but "the court did not base its determination of disorderly conduct on that altercation.  The court instead focused on Lounsbury's conduct after the initial altercation between Lounsbury and" another bar patron, which caused a disturbance.  *Id.*, ¶10.  We concluded that there was sufficient evidence to affirm the circuit court's findings on appeal.  *Id.*, ¶15.

¶26  *Lounsbury* does not assist Now, however, because that case involved materially different facts.  Now observes that "in *Lounsbury*, the parties who were involved in the fight[,] similar to [Now] and [Keller] in this case, were determined not to be guilty of any battery upon each other."  However, in *Lounsbury*, there was no jury determination that the parties were not guilty of battery; instead, the prosecutor declined to issue charges for the fight.  *See id.*, ¶¶8-10.  The prosecutor's exercise of discretion in deciding not to issue charges for the actual fight does not equate to a determination that the men were "not guilty of any battery upon each other."  Further, we do not dispute that the prosecutor in this case had discretion not to charge Now for the bar fight or to charge both Now and Keller for the altercation.  Nevertheless, whether the State properly exercised its prosecutorial discretion is not the issue before us.

---

[4] An unpublished opinion that is authored by a single judge and issued on or after July 1, 2009, may be cited for its persuasive value.  WIS. STAT. RULE 809.23(3)(b).

11

¶27     Now's argument that the absence of prosecution for the bar fight in *Lounsbury* serves as evidence that the disorderly conduct statute does not apply to the circumstances here is a logical non sequitur. Simply because the State exercised its prosecutorial discretion and declined to issue charges against the two men in *Lounsbury* for the actual bar fight does not mean that they could not have been charged, and, further, no language in *Lounsbury* suggests that a disorderly conduct charge must be supported by the defendant's conduct *after* an altercation. Here, we agree with the circuit court that there was sufficient evidence to support the guilty verdict on the disorderly conduct charge based on Now's conduct "before" and/or "during the altercation." Now's postaltercation conduct does not invalidate his conviction for disorderly conduct in this instance.

¶28     In his reply, Now also contends that the State's argument in support of the jury's verdict "ignores the fact that the exchange of words between Now and [Keller] occurred outside the bar and, therefore, outside the earshot of any other persons" and "fails to recognize the testimony that Now was not the instigator in the situation … and that he tried to avoid the situation until [Keller] started the unlawful interference." (Formatting altered.)

¶29     Now's view of the crime of disorderly conduct is too narrow. To the extent that Now is arguing that his verbal exchange with Keller cannot support a disorderly conduct conviction, that contention is incorrect. First, by its plain language, WIS. STAT. § 947.01(1) applies "in a public *or private* place." (Emphasis added.) Further, for the conduct to be disorderly it need only be

engaged in "under circumstances in which the conduct tends to … provoke a disturbance." Sec. 947.01(1); WIS JI—CRIMINAL 1900.[5]

¶30     Moreover, Now's attempt to isolate his speech from the surrounding events ignores the long-standing principle that "[i]t is the combination of conduct and circumstances that is crucial in applying the [disorderly conduct] statute to a particular situation." *See State v. Maker*, 48 Wis. 2d 612, 616, 180 N.W.2d 707 (1970). Now is incorrect in arguing that because he was "not the instigator" and "tried to avoid the situation," it was not foreseeable, given the parties' prior history, that verbal abuse outside of a bar at 2:00 a.m. when alcohol was involved would tend to provoke a response.

¶31     In this context, Now's volitional choice to use provocative language to insult Keller was not a harmless private exchange; it was the catalyst in a tension-filled, volatile environment that ultimately provoked a violent disturbance. *See State v. Breitzman*, 2017 WI 100, ¶58, 378 Wis. 2d 431, 904 N.W.2d 93 ("'[C]onvictions for being otherwise disorderly result[] from the inappropriateness of specific conduct because of the circumstances involved,' namely where 'demeanor could be deemed abusive or disturbing in the eyes of reasonable persons.'" (alterations in original; citation omitted)); *see also State v. Douglas D.*, 2001 WI 47, ¶¶21, 24, 243 Wis. 2d 204, 626 N.W.2d 725 (stating that "'abusive' speech carries with it the nonspeech element of an express or implied threat or

---

[5] Now observes, however, that the jury instruction comment also states that the conduct is only disorderly "as long as there exists the real possibility that this disturbance or disruption will spill over and disrupt the peace, order or safety of the surrounding community as well." *See* WIS JI—CRIMINAL 1900. Now fails to recognize, however, that the disturbance *did* "spill over and disrupt the peace" when Now and Keller fell onto the floor of the bar; therefore, the possibility *was* real.

challenge to fight" and that "[t]hese nonspeech elements constitute the proscribed 'conduct' under [WIS. STAT.] § 947.01 … that, consistent with the First Amendment, can be punished"); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942) (stating that the "right of free speech is not absolute at all times and under all circumstances," including "'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace"). Even if the fight had not ended on the floor of the bar, the nature of the conduct remained the same and was sufficient for the jury to find that Now engaged in disorderly conduct that evening.

### B. Felony bail jumping

¶32     Now also contends that the evidence was insufficient to support the bail jumping verdict under WIS. STAT. § 946.49(1)(b), which requires the State to prove that the defendant was charged with a felony, was released from custody on bond, and intentionally failed to comply with the terms of that bond. *See State v. Dawson*, 195 Wis. 2d 161, 170-71, 536 N.W.2d 119 (Ct. App. 1995); WIS JI—CRIMINAL 1795. Now focuses on the intent element, claiming that "[a] conviction for disorderly conduct does not necessarily demonstrate intentional conduct" because "[d]isorderly conduct has no reference to intent in its elements" and "does not require that his actions be intended to cause a disturbance." Therefore, he argues, his bail jumping conviction was not "supported by any evidence sufficient to prove that … [he] intentionally violated a condition of his bond." Now further argues that his acquittal of substantial battery, which required intent to cause bodily harm unless he acted in self-defense, demonstrated that he did not "intentionally" commit a crime in violation of his bond. Thus, he calls the jury's verdicts acquitting him of battery, but finding him guilty of bail jumping, "inconsistent." Finally, Now analogizes sexual assault and concealed weapons

14

cases to support his assertion that only intentional crimes can support a bail jumping conviction.

¶33    First, we note that none of the legal authority cited by Now in support of his position states, or even suggests, that a defendant may be convicted of bail jumping by violating his bond condition that he not intentionally commit a crime only if that crime has an intent element.  Instead, the legislature was clear that "[a]s a condition of release in all cases, a person released [from custody] shall not commit *any crime*."  WIS. STAT. §§ 969.02(4), 969.03(2) (emphasis added).  As the State observes, the legislature "conspicuously did not limit [it] to 'any crime requiring intent.'"  Further, as the State warns, Now's suggested limitation "would seriously curtail the State's ability to deter misconduct by defendants released on bond and to protect the public."  Thus, to the extent Now asserts that he could not be convicted of bail jumping based upon his intentional violation of his bond condition that he not commit new crimes because disorderly conduct does not have an intent element, we reject his assertion.

¶34    Now's arguments related to his bail jumping conviction rest upon a flawed distinction between intentional and volitional conduct, for the purpose of WIS. STAT. § 946.49(1) ("intentionally fails to comply with the terms of his or her bond"), and accidental or unknowing acts.  Under WIS. STAT. § 939.23(3), "'[i]ntentionally' means that the actor either has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result."  Here, all of Now's conduct was intentional.  Now admitted that he intentionally yelled at Keller that he was "white trash" or a "piece of work"; Now had the purpose to complete a "maneuver" to avoid being tackled by Keller, which caused Keller to hit the ground and sustain a head injury; and Now intentionally punched Keller while Keller was on the ground.  These were not

accidental actions. Although Now may not have intended to commit the specific crime of disorderly conduct or intended to create a disturbance, he did intentionally take all of the above actions that resulted in the disturbance and, as the jury found, those intentional actions satisfied the elements of disorderly conduct.

¶35 Finally, Now's argument regarding the battery charge suffers from a logical fallacy: the jury's conclusion that the evidence was insufficient to support a finding of substantial battery in no way precludes a finding that the State proved beyond a reasonable doubt that Now had committed disorderly conduct. Contrary to Now's argument, these verdicts were not inconsistent. According to Now, his "actions in defending himself [are] supported by the facts, demonstrating his only physically violent actions were in defense of his person." However, physically violent acts are not the only acts that can give rise to disorderly conduct. *See* WIS. STAT. § 947.01(1). The jury could have reasonably concluded that Now's initial verbal provocations toward Keller constituted disorderly conduct, which occurred prior to any violent acts that Now claims were taken in self-defense. The disorderly conduct charge is supported, at the very least, by Now's volitional actions prior to the physical struggle.

## II. Sixth Amendment Confrontation Clause

¶36 Next, Now argues that the circuit court violated his Sixth Amendment right to confrontation when it refused to permit him to cross-examine Keller regarding Keller's "decision to request that the trial not proceed." "The Confrontation Clauses of the United States and Wisconsin Constitutions guarantee criminal defendants the right to confront the witnesses against them." *State v. Manuel*, 2005 WI 75, ¶36, 281 Wis. 2d 554, 697 N.W.2d 811 (citation omitted).

Whether a defendant's Sixth Amendment right to confrontation was violated is a "question of constitutional law subject to independent review." ***State v. Nieves***, 2017 WI 69, ¶15, 376 Wis. 2d 300, 897 N.W.2d 363 (citation omitted).

¶37　"In the context of a constitutional challenge to limitations on cross-examination, the United States Supreme Court has observed, '[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose limits on cross-examination.'" ***State v. Rhodes***, 2011 WI 73, ¶23, 336 Wis. 2d 64, 799 N.W.2d 850 (alteration in original; citation omitted). The circuit court has discretion "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." ***Id.***, ¶39 (citation omitted). "[W]e review such decisions for an erroneous exercise of discretion." ***Id.***, ¶23. To this end, we consider whether the court "reviewed the relevant facts; applied a proper standard of law; and using a rational process, reached a reasonable conclusion." ***State v. Davidson***, 2000 WI 91, ¶53, 236 Wis. 2d 537, 613 N.W.2d 606. We will also review the record independently to determine whether there is any reasonable basis for the circuit court's discretionary decision. ***Id.***

¶38　According to Now, Keller "had written a letter to" the district attorney "indicating that he did not wish the prosecution [of this case] to continue," and "[t]his request was going to be the subject of cross-examination by [Now] to indicate that there were a number of reasons which were causing [Keller] to not want to have the case proceed," including that "the facts provided to the police were not true." He asserts that "[t]he absence of [Keller's] recollection on a number of subjects combined with the jury knowing that [Keller] did not want to proceed on this case could have and would have resulted in a different verdict."

However, Now explains that "[t]he Court denied [his] motion to cross-examine [Keller] about his desire to not have a trial proceed and have the charges dropped even though he was the alleged victim in this matter." Further, Now contends that the prosecutor told the court that she "had met with [Keller]" and that "the problem of [Keller] not wanting to testify was now resolved." Now argues that this meeting "should also have been the subject of proper cross-examination."

¶39 As an initial matter, and as the State identifies, Now's briefs before this court are devoid of any citations to the record in support of his above assertions.[6] Now also does not provide citations to the record to support his claim that the circuit court "ruled that the defense could not get into the reasons why [Keller] did not want to testify and continue with the prosecution of this case." Therefore, the precise scope of the court's ruling on this issue remains unclear.[7]

¶40 Now's failure to provide citations to the record in support of his arguments violates WIS. STAT. RULE 809.19(1)(e). *See Grothe v. Valley Coatings, Inc.*, 2000 WI App 240, ¶6, 239 Wis. 2d 406, 620 N.W.2d 463. As the State aptly recognizes, we have "'no duty to scour the record' to review arguments

---

[6] We note that in Now's reply brief, he does cite to the circuit court's hearing on the posttrial motions, but those citations are insufficient to provide support for Now's argument.

[7] We note that at the posttrial motion hearing, the circuit court also did not recall its ruling. Instead, the court stated,

> I do not remember the exact context of how or why [the issue of whether Keller wanted the case to proceed or the charges to be dropped had] come up. It's been represented that the Court did not allow that question, and the State has said that that would be irrelevant. I don't have the transcript of exactly what was said or how it was brought up, but the State's recitation of what happened is, if not consistent with my memory, consistent with how I think I would rule on that motion.

18

unaccompanied by adequate record citations." *See State v. Carter*, 2017 WI App 9, ¶21, 373 Wis. 2d 722, 892 N.W.2d 754 (citation omitted); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in [the record]."). Our review on appeal "is confined to those parts of the record made available to [us]," and we "may decline to review issues inadequately briefed." *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶41 Now therefore fails to provide record support for his claim that the circuit court denied his right to confront Keller regarding Keller's change of heart in pressing charges, and to the extent such support exists, we have no obligation to search for it. We could deny Now's unsupported Sixth Amendment violation claim based solely on his failure to support his legal argument with proper citations to the record.

¶42 If we, like the circuit court, assume, without deciding, that the State's discussion of the court's ruling at the posttrial motions hearing was correct and that Now was merely prohibited from asking Keller, "Did you want this to go to trial," we agree that the court did not erroneously exercise its discretion. In response to Now's posttrial motion, the court determined that Keller's "feelings on whether this case should be prosecuted" are "not relevant," that its previous ruling did "not violate the right of confrontation because all of the related dovetail questions that come out of that [question] were not forbidden [and] were pursued," and "that there was a thorough cross-examination of [Keller]." At trial, Now's defense counsel cross-examined Keller regarding whether he had some anger with regard to Now; whether Keller was bad-mouthing Now that evening; whether Keller had "a considerable amount to drink" and had been drinking since 4:00 p.m. that day; whether there were facts "that [Keller did not] recall because of

19

[his] intoxication"; and whether he was "guessing in a lot of the information that [he was] providing." Defense counsel also asked Keller whether he provoked the altercation, specifically stating, "Is it possible that in fact you came at Mr. Now and Mr. Now put you to the ground as a result of your coming at him?"

¶43 Now argues, however, that Keller's "request that the case not be pursued is definitely relevant and should have been made known to the jury" because it "may have demonstrated that this request had no bearings on the facts or it might have shown that he was uncertain of what he had originally said." Now's contention regarding the significance of Keller's testimony on this issue is, at best, speculative. Further, we agree with the State and the circuit court that the issue of Keller's desire to prosecute the case did not go to the issue of Now's guilt. And, to the extent that Keller's testimony on this issue may have had probative value because it suggested that Keller "was uncertain of what he had originally said," it is clear that defense counsel's cross-examination elicited testimony that sufficiently challenged Keller's credibility. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (citation omitted)). Therefore, the circuit court's ruling on Keller's cross-examination did not deny Now his Sixth Amendment Confrontation Clause rights.

### III. Waiver of the Right to a Jury Trial

¶44 Finally, Now argues that he is entitled to a new trial on the bail jumping charge because he did not validly waive his right to have the jury determine all of the elements of that charge. According to Now, although he signed the stipulation and the circuit court engaged in a colloquy with him

regarding the stipulation, "there was no colloquy … wherein he was advised and acknowledged waiving his constitutional rights to a jury determination of the facts," and "he was not aware he would be giving up his constitutional rights." For support, Now cites *State v. Hauk*, 2002 WI App 226, ¶¶31-37, 257 Wis. 2d 579, 652 N.W.2d 393, where we determined that the defendant never waived her right to a jury trial on a bail jumping conviction because the circuit court did not engage in a proper colloquy with her and only the defendant's attorney had signed the stipulation. Based on *Hauk*, Now argues that "the waiver of a right to a jury on even a partial set of the elements of a crime must be done in a manner which explicitly determines a waiver of a defendant's rights to have the jury determine all elements of the crime."

¶45    We review de novo the constitutional issue of whether by a stipulation to an element of a criminal offense, a defendant validly waived his or her right to a jury trial on that element. *Smith*, 342 Wis. 2d 710, ¶25. Based on the circumstances of this case, we conclude that assuming, without deciding, that Now did not validly waive his right to have a jury determine every element of the felony bail jumping charge, any error in that regard was harmless. *See id.*, ¶¶59-63 & n.19. An error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *State v. Dobbs*, 2020 WI 64, ¶68, 392 Wis. 2d 505, 945 N.W.2d 609 (citation omitted). The beneficiary of the error—here, the State—has the burden of proving that the error was harmless. *State v. Harvey*, 2002 WI 93, ¶41, 254 Wis. 2d 442, 647 N.W.2d 189.

¶46    Now stipulated that he was released on a bond, and during his testimony, he acknowledged as much to the jury. The issue of whether he was released on bond was, therefore, tried to the jury. Now also stipulated that one of

the conditions of his bond was that he not commit a crime and that he signed this bond. Now does not claim that these assertions are untrue or incorrect. Further, after reviewing the evidence in the case, the jury found Now guilty of disorderly conduct, and the jury subsequently also found Now guilty of bail jumping because he had committed the crime of disorderly conduct, which violated the condition of his bond. Therefore, it is clear beyond a reasonable doubt the jury's verdict would not have changed if it had also been asked to determine whether Now was out on bond, the terms of which prohibited him from committing further crimes, and whether Now had signed the bond. The jury would still have convicted Now of bail jumping. *See* **Smith**, 342 Wis. 2d 710, ¶69. Accordingly, we conclude that the State has met its burden to show that any constitutional error with regard to Now's stipulation was harmless.[8]

> *By the Court.*—Judgment affirmed.

---

[8] In his reply, Now argues that he

> never had the opportunity to argue the bond's applicability in front of the jury. In other words, the stipulation ruled out evidence as to whether he knowingly understood how the bond applied to him and how it specifically controlled his future activities including the duty concerning how his use of self-defense might be involved when committing a crime and how allegations of disorderly conduct were involved in the determination of his provisions not to commit any crime.

Now's argument is not persuasive. As Now argued in his motion to sever, he was concerned that he would suffer "substantial unfair prejudice" from the "admission of evidence that [he] potentially committed other criminal offenses." Thus, the entire purpose of the stipulation was to prevent the jury from knowing that Now was released on a felony bond and knowing anything with regard to why he was on bond. Now's understanding of how the bond applied to him does not alter the factual and legal issue of whether he committed disorderly conduct by his volitional acts, which resulted in a bond violation under the facts of this case.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.